## CIRCUIT COURT OF LOUDOUN COUNTY

Deborah M. Stoken

v.

Kenneth M. Stoken

July 29, 1994

Case No. (Chancery) 14990

BY JUDGE JAMES H. CHAMBLIN

After consideration of the evidence presented on June 30, July 13, and July 19, 1994, the argument of counsel, and the factors set forth in Virginia Code § 20-124.3, custody of the parties' minor daughter, Holly Ann Stoken, age 10, is awarded to the complainant, Deborah M. Stoken, with visitation to the defendant, Kenneth M. Stoken, as follows:

(1) Every other weekend on the schedule currently being used by the parties;

(2) Two evenings per week when Holly is not in school, and one evening per week when she is in school;

(3) One week during August before Holly returns to school;

(4) Alternating major holidays and significant days in Holly's life; and

(5) Mr. Stoken shall refrain from smoking and the consumption of alcohol during visitations and shall make all reasonable efforts to prevent third parties from smoking or consuming alcohol in Holly's presence.

The Court expects the parties to work out the necessary details to effect the visitation outlined above.

A considerable amount of evidence was presented on the three days which the Court heard this matter. It is impossible for me to mention herein all the evidence presented. Counsel and the parties may rest assured that I have considered all the evidence presented. I will not recite herein all the evidence presented, but I will mention only the evidence and the conclusions therefrom that I feel are pertinent to the reasons for my decision.

Neither party is an unfit parent. Both Mr. and Mrs. Stoken love Holly, and undoubtedly, Holly loves both her parents. In a perfect world, Holly would want all three of them living happily together. Being very intelligent and articulate beyond her ten years, she realizes, just as I realize, that this will never happen because of the complete deterioration of the relationship between her mother and father.

Holly is a normal child caught in the middle of an acrimonious relationship between her mother and father. Much to her credit, she shows no signs of any psychological problems other than those normally to be expected from a child of separated, soon to be divorced, parents despite her being placed in the middle of her parents' problems. Considering the extent to which both parties have burdened Holly with their feelings, concerns, and fears, they should feel very lucky that they still have such a normal child not yet adversely affected by their bitter disputes. They never should have and I trust they will not in the future use Holly as a conduit of their communications.

Mr. and Mrs. Stoken have to learn to communicate about Holly directly with each other and not through Holly. Both parties must stop saying things to Holly designed to gain favor from her or to denigrate the other parent in her eyes.

When I spoke with Holly in chambers, I told her that I would keep confidential what she told me. I will do so. She expressed a preference as to custody, but she was also very perceptive of the relationship between her parents. She is a very normal, loving child caught in the middle through no fault of her own. Her parents must realize that Holly does not want to say anything that will hurt either parent.

In my opinion, Holly is caught between two parenting styles, neither of which can be considered inappropriate. Mr. Stoken obviously treats Holly on a more adult level than Mrs. Stoken. Perhaps it is because he sees her for relatively short periods of time, or perhaps he attempts with Holly to put another person in his life because he is lonely. On the other hand, Mrs. Stoken mothers Holly and sees her as her little daughter. Perhaps she fails to recognize the level of Holly's maturity and perception. Maybe it is the motherly instinct in Mrs. Stoken.

Joint custody is not appropriate in this case because of the almost total lack of direct communication between Mr. and Mrs. Stoken. In my opinion, joint custody should always be considered by a court, but it cannot work unless the parents can and do communicate smoothly and effectively with each other.

Mrs. Stoken provides adequately for the physical comforts of Holly. Her home, which she intends to continue to rent, provides a safe, comfortable place for Holly. She has friends near her home and at her school. Holly does very well at Arcola Elementary. Her grades are excellent, and her teacher's comments on her report card from last year (4th grade) do not indicate any problems whatsoever with Holly's school work. Her marks in art and music may have slipped from predominantly "ones" in 3rd grade to "twos" in 4th grade, but her teacher saw no need to mention it as a concern.

Mr. Stoken currently resides in a one-room apartment with his mother in Annandale. When Holly visits, she sleeps on a cot in his mother's room. Obviously, this would not be the best of environments for Holly. However, Mr. Stoken testified that if he gets custody of Holly, then he will rent an apartment at University Heights in Loudoun County. He says he can afford a two-bedroom apartment without any child support from Mrs. Stoken. If he does rent at University Heights, then Holly would go to a different school, Ashburn Elementary.

I cannot overlook the actions of Mrs. Stoken in February and April of last year when she was unsuccessful in obtaining a protective order against Mr. Stoken in the Loudoun J.D.R. Court and when she obtained two assault and battery warrants against Mr. Stoken. He was subsequently acquitted of both charges. Mrs. Stoken knew exactly what she was doing in both instances. Although I do accept that she was at least partly motivated to get Mr. Stoken help with what she perceived to be an alcohol problem, I feel that she used the legal system to better her position on matters of future divorce and custody proceedings. She was partly, but not completely, successful in doing so. She did get Mr. Stoken to ultimately consider the effect of alcohol on his life; and, in September, 1993, much to Mr. Stoken's credit, he decided to stop consuming alcohol. In a sense, Mrs. Stoken was successful in getting Mr. Stoken the help she felt he needed.

Mr. Stoken places considerable emphasis on the actions of Mrs. Stoken in February through May of last year. I cannot find from the evidence that Mrs. Stoken was completely unjustified in seeking the protective order and the assault and battery warrants. I feel that she had reason to seek them. The circumstances of the securing of the warrants, including Mrs. Stoken's talking to counsel, her involvement with the Loudoun Abused Women's Shelter and its staff, and her return to the marital residence (while Mr. Stoken was there) after visiting the magistrate cast a pall of suspicion over

her, but they do not, in and of themselves, make her an unfit parent. The extent to which Mrs. Stoken involved Holly in these machinations concerns me more than her attacks on her husband. Even a parent who hates the other parent is not automatically a bad parent because there could be a valid reason for the feeling.

In my opinion, the actions of Mrs. Stoken in February through May of last year are not any more of a detriment to her than Mr. Stoken's actions after he was acquitted of the assault and battery charges are a detriment to him. He embarked on a campaign of documenting everything and building a case for custody on statements he attributes to Holly about her treatment by Mrs. Stoken. I am of the opinion that the incidents which Mr. Stoken related as being told to him by Holly are not as bad as he portrayed them to have been. Further, the two most serious incidents about which Holly talked to Mr. Stoken were not only not as bad as he related but also precipitated by Holly's misbehavior. Finally, if Mr. Stoken was so concerned about what he felt that Mrs. Stoken was doing to Holly, then why did he not confront Mrs. Stoken about it before he instructed his attorney to seek leave to file the amended cross-bill to seek custody of Holly?

Mr. Stoken asserts that Holly is afraid of her mother. I do not agree. Holly does not fear either of her parents. Mr. Stoken colored all his testimony about his reasons for seeking custody as arising out of Holly's fear of her mother. For example, he stated that Holly disliked, and was afraid to talk to, Mary Adkins because Holly feared that Ms. Adkins would tell Mrs. Stoken what she said, and as a result, Mrs. Stoken would punish Holly. To the contrary, I feel that Holly loves her father so much that she did not like the things that Mary Adkins was saying about him which Holly interpreted to be derogatory. Holly does not fear her mother.

Not only is Holly a conduit of communication between her parents, but also she is burdened (when a ten-year-old child should not be) with the parties' fears and bitterness. For example, Mr. Stoken unnecessarily burdened Holly with his fear of being "homeless" when he had an argument with his mother. On the other hand, for example, Mrs. Stoken should not have blamed Holly when Mr. Stoken showed up with the deputies on January 12, 1994. Mrs. Stoken may say that she does not want Holly to be involved in her problems with Mr. Stoken, but she does put Holly in the middle. What did Mrs. Stoken expect to accomplish when she, without telling Holly otherwise, refused to mail a letter that Holly had given to her to mail to Mr. Caruthers in September, 1993? What did Mr. Stoken expect to accomplish when he returned Holly after a Wednesday visitation ac-

companied by two police officers over his concern about some property that he had been given the right to retrieve by a court order entered months before?

Neither party nor Holly have any physical or mental problems. I feel that the extent of Mr. Stoken's drinking was overly exaggerated by Mrs. Stoken. She offered no evidence to corroborate any excessive alcohol consumption. She readily conceded that Mr. Stoken had stopped drinking in September, 1993. I have no trouble accepting that one of the reasons Mr. Stoken stopped drinking was the probability that Mrs. Stoken would use his alcohol consumption against him. I feel that financial problems took a greater toll on the marriage than Mr. Stoken's alcohol consumption or alleged abuse of Mrs. Stoken. Both parties must accept responsibility for the financial problems.

Mr. Stoken has exaggerated the stress in Mrs. Stoken's life. Certainly she has stress. Very few people are stress-free these days. A separation and divorce is almost always stressful to a spouse, especially when children are involved. He has also exaggerated her temper. The evidence of her temper came almost exclusively from Mr. Stoken. He complains that Mrs. Stoken is not frequently there when he returns Holly, but he offered little of specific times.

The expert witnesses called by the parties were not especially helpful to the Court because not one of them had seen both parties and Holly. However, they were helpful in determining that no one suffers from any psychological problems except Mrs. Stoken's depression and stress (neither of which are significant).

Mr. Stoken wants the Court to believe that a strong bond between him and Holly came into being as a result of the one and one-half years that he conducted his business out of a shop next to the family residence. However, it ended over two years ago when Holly started after-school care in the second grade. He did not object when Holly started after-school care. A five- or six-year-old girl should not have been around a woodworking shop while her father was working. It is not so much the danger of her being there as it lends doubt to Holly's being at the shop all that much. Mr. Stoken was working to make a living. He was not providing full-time child care.

I agree that this is not a change of circumstances case. There is no prejudice to either party as a result of the consent *pendente lite* order. There is no presumption due to gender or the status quo. However, the Court cannot ignore the current circumstances or the past history. All

factors must be considered in light of the past history. Further, stability and continuity cannot be ignored.

If one of her parents were not able to have custody of Holly, then the other would be a proper custodian. But here both parents are available custodians for Holly. Each parent's abilities and skills are roughly equal, but the crucial difference in this case is that Holly's being with her mother is a known situation, whereas a change in custody to Mr. Stoken represents placing her in an unknown situation, a situation that Mr. Stoken has not yet finalized for himself. But further, even assuming that he can obtain the apartment and enroll Holly in school as he wants, the stability and continuity of the present situation is in Holly's best interest. She is flourishing and thriving in the custody of her mother.

I need to address Mr. Caruthers' impassioned argument that Mr. Stoken should not be penalized because he agreed in May, 1993 (see the decree entered on August 9, 1993) that Mrs. Stoken would have custody of Holly *pendente lite*. I know that he will feel that my statements in the preceding paragraph indicate that I have done exactly that, i.e., I have awarded custody to Mrs. Stoken because she has had custody of Holly *pendente lite*. But that is not my reasoning or my decision. They are based on what has been going on in Holly's life without a concern as to why she has been in her mother's custody.

To decide permanent custody where there has been a prior *pendente lite* consent custody order in a fashion as suggested by Mr. Caruthers would require this Court to ignore completely the recent past (in this case, from May, 1993) and Holly's present situation. While I agree that past events are important in a custody determination, I feel that the present circumstances are just as important. Each case is different. In some cases, past events can carry more weight, while in others, the present circumstances are more determinative. There is no presumption in favor of the status quo. I have never, and do not here, apply such a presumption.

Custody decisions must be child-focused, not parent-focused. Adopting Mr. Caruthers' view is looking at custody from the parents' point of view. It would let the parents set the playing field for a custody decision. While I always encourage parents to agree on custody *pendente lite*, they must realize that I cannot ignore the consequences of their agreement if they cannot ultimately agree on permanent custody and the Court has to decide the issue.